61907. McNORTON v. THE STATE.

CARLEY, Judge.

Appellant appeals from his conviction for violation of the Georgia Controlled Substances Act.

1. Citing *Royal v. State,* 155 Ga. App. 691 (272 SE2d 556) (1980), appellant urges that it was error to deny his motion for a directed verdict of acquittal based upon the defense of entrapment. *Royal* was reversed in *State v. Royal,* 247 Ga. 309 (275 SE2d 646) (1981). "A distinction must be made between evidence which *raises* a defense of entrapment and which would require that the jury be charged as to the law of entrapment and the burden of proof thereon, and evidence which, under the standards set out in Code Ann. § 27-1802 would *demand* a finding of entrapment and, therefore, a directed verdict of acquittal. Lack of conflict in the evidence is only one of the criteria in Code Ann. § 27-1802. Thus a defendant's testimony as to entrapment, even if unrebutted by any other witness to the alleged misconduct, will not entitle him to a directed verdict of acquittal unless that unrebutted testimony, together with all reasonable deductions and inferences therefrom, demands a finding that entrapment occurred." *Royal,* 247 Ga. at 310, supra.

Contrary to appellant's contention, his testimony that he was, in effect, coerced into committing a crime was not uncontradicted. There was testimony by the undercover agents that appellant willingly cooperated. In fact, one of the officers testified that after the "buy" appellant voluntarily told him that "if I needed anything else to give him a call and he might be able to help us out." Also, it is clear

that appellant—not the police officers or informer—selected the source from which the drugs were purchased. Compare *Griffin v. State,* 154 Ga. App. 261, 265 (3) (267 SE2d 867) (1980).

As in *State v. Royal,* 247 Ga. 309, 311, supra, "[t]his is one of those cases in which a question of fact was presented as to entrapment for determination by the jury. The evidence did not, however, *demand* a finding that defendant [McNorton] was entrapped into the commission of a crime. [Cits.]" Appellant's motion for a directed verdict of acquittal was not erroneously denied.

2. We find no error in the admission of evidence concerning appellant's subsequent sale of drugs. " 'Once the identity of the accused as the perpetrator of the offense separate and distinct from the one for which he is on trial has been proven, testimony concerning the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind, and course of conduct. [Cits.]' [Cits.]" *State v. Johnson,* 246 Ga. 654, 655 (272 SE2d 321) (1980). The evidence in the instant case "was properly allowed as tending to prove motive, intent, state of mind, and was directly pertinent to the question of entrapment." *Marshall v. State,* 143 Ga. App. 249, 253 (3) (237 SE2d 709) (1977).

*Judgment affirmed. Banke, J., concurs. Deen, P. J., concurs specially.*

DECIDED SEPTEMBER 21, 1981.

*Scott Walters, Jr.,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Paul Howard, Assistant District Attorneys,* for appellee.

DEEN, Presiding Judge, concurring specially.

There is no conflict in the following evidence: McNorton was a dull normal youth aged 23 with a seventh grade education, who had been an addict in his early teens, was aided by a mental health agency and then Atlanta Rehabilitation Center, had had no contact with drugs for three or four years preceding this incident, and was suddenly hounded by systematic telephone calls from Paula, a girl he had worked with at the Center who had turned informer, up to six or eight times a day with conversations lasting up to two hours. The calls begged defendant to help her find some drugs for a "friend" who had threatened her with a gun, etc. The defendant has an emotional and judgmental age of 13 or 14, is withdrawn, immature, depressed, unusually susceptible to the influence of others and unable to evaluate the consequences of his actions, as shown by highly competent professional testimony. He had no prior contact. There

appears not to be the slightest doubt here but that overzealous "informers," working with the police, played on his susceptibilities with fabricated fictional values, confusional techniques and change agent strategy stories to achieve exactly this result, and to undo what the boy's family with assistance from the Georgia governmental institutions and their personnel had labored very hard over the years to achieve — a cure of the defendant's addiction. It could be argued that use of these tactics itself amounts to mental and emotional child abuse, and while it is difficult to believe this conduct deserves to be rewarded with a conviction, yet, reasonable women and men on the jury may differ in considering two additional points in this case.

1. As to *incipiency of free will* of appellant. At the very heart of our juvenile and criminal justice systems and administration of justice is the presumption of sanity of all individuals. Particularly where this concept has not been challenged by appellant, the jury may believe that he knew right from wrong at the time of the act, that he possessed a free will, that he could make a choice and that he is responsible for his choice made. This indubitably is a legal position of non-determinism. This is also very similar to consideration given when one executes a will; that is, it is presumed to have been freely and voluntarily made and that the testator was not unduly influenced. Of course, this also may be challenged. In viewing undue influence and free will the jury might consider appellant's offer to an official witness to help secure drugs for others on another occasion. "... give him a call and he might be able to help us out." This jury question has been resolved.

2. As to *disregarding testimony of experts.* A jury may disregard the opinion evidence of all experts and may use their own common sense and experience based on observations of cause and effect. They may have in this case totally rejected all expert opinion testimony relating to appellant's emotional maturity and judgmental age and based their finding on this question on their own observations and common sense in ascertaining a conclusion that his judgmental age was closer to age 23 and that he was mentally and emotionally stable.

We must affirm the jury's conviction.